This decision has been published in *Ohio Official Reports* at 81 Ohio St.3d 506.

COLLINS, ADMR., APPELLANT, *v*. SOTKA; DUDICH, APPELLEE.

[Cite as *Collins v. Sotka*, 1998-Ohio-331.]

*Torts—Wrongful death—Discovery rule tolls R.C. 2125.02(D), when—Statute of limitations in wrongful death action that stems from a murder begins to run, when.*

1. The discovery rule applies to toll R.C. 2125.02(D), the two-year statute of limitations for a wrongful death claim. (*Shover v. Cordis Corp.* [1991], 61 Ohio St.3d 213, 574 N.E.2d 457, overruled.)

2. In a wrongful death action that stems from a murder, the statute of limitations begins to run when the victim's survivors discover, or through the exercise of reasonable diligence should have discovered, that the defendant has been convicted and sentenced for the murder.

(No. 96-2127 — Submitted December 10, 1997 — Decided April 29, 1998.)

APPEAL from the Court of Appeals for Lake County, No. 95-L-155.

{¶ 1} The underlying facts in this case stem from the tragic abduction and killing of seventeen-year-old Angel C. Ormston by defendant Mark J. Sotka. Angel was last seen alive by family and friends on July 31, 1992. Nearly five months later, on December 15, 1992, two hunters discovered Angel's body in the woods in Perry Township. An autopsy was performed by the Cuyahoga County Coroner's Office, finding the cause of death to be multiple stab wounds in the trunk. The first death certificate listed the date of death as "unknown." However, at the request of Angel's family, a second death certificate was issued listing the date of death as July 31, 1992, the date Angel disappeared.

{¶ 2} On January 4, 1993, the Lake County Grand Jury handed down a secret indictment against Sotka, charging him with aggravated murder (count one), aggravated kidnapping (count two), and aggravated felonious assault. On February 5, 1993, Sotka pled guilty to the aggravated murder and kidnapping of Angel. On that same date, but in an order journalized on February 10, 1993, the trial court sentenced Sotka to a term of incarceration of twenty years on count one and to an indefinite term of ten to twenty-five years on count two, to run consecutively to count one.

{¶ 3} On February 6, 1995, plaintiff-appellant, Luckye Collins, the administrator for the estate of Angel Ormston, filed a *pro se* wrongful death action against Sotka and defendant-appellee Kathleen Dudich, the owner of the vacant house where Sotka allegedly killed the decedent. Both Sotka and Dudich sought to dismiss the complaint on the ground that it had not been timely filed within the two-year statute of limitations for a wrongful death action.

{¶ 4} Appellee argued that since the wrongful death action was not commenced within two years from the decedent's death (which was said to be July 31, 1992), the action was time-barred under R.C. 2125.01. The trial court dismissed the case because the action was not commenced within two years from the date of death.

{¶ 5} On appeal, appellant argued that the discovery rule should apply so that the two-year statute of limitations begins to run when the court adjudicates the murder case and states who is

responsible for the murder. Only then can a wrongful death action commence. The court of appeals, however, relying on *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 574 N.E.2d 457, rejected this argument and refused to apply the discovery rule to this type of case. The court of appeals affirmed the trial court and held that the action was properly dismissed, since the complaint was not filed within two years from the decedent's date of death.

{¶ 6} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Les E. Rockmael*, for appellant.

*Williams & Sennett Co., L.P.A., Roger H. Williams*, *Louis R. Moliterno* and *Gina K. Desiderio*, for appellee Dudich.

_____

**FRANCIS E. SWEENEY, SR., J**.

{¶ 7} In the context of a wrongful death action, we are asked to determine when the two-year statute of limitations begins to run. In answering this question, we must decide whether the statute of limitations runs from the date of death of the victim, or whether the discovery rule can be used to extend the statutory period in which to commence such an action. For the reasons that follow, we hold that the discovery rule is applicable.

{¶ 8} Ordinarily, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed. *Kunz v. Buckeye Union Ins. Co.* (1982), 1 Ohio St.3d 79, 1 OBR 117, 437 N.E.2d 1194. However, under the discovery rule, which is an exception to the general rule, a cause of action accrues when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she was injured by the wrongful conduct of the defendant. *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727; *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438, syllabus. In essence, the running of the limitations period is delayed until triggered by a "cognizable event" that alerts the plaintiff that he or she was injured by the defendant. See*, e.g., Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398 (where the cognizable event in a legal malpractice case was the event that should have alerted a reasonable person that a questionable legal practice may have occurred).

{¶ 9} In deciding whether the discovery rule can be used to toll R.C. 2125.02(D), the two-year statute of limitations for a wrongful death claim, it is necessary to revisit our decision in *Shover v. Cordis Corp.*, which appellee asserts directly supports her position, and which the lower courts relied upon in dismissing appellant's cause of action.

{¶ 10} In *Shover,* the decedent's death was caused by a defective pacemaker. It was not until about four years after her death (and beyond the two-year statute of limitations) that decedent's son learned through a newspaper article that the pacemaker manufacturer had pled guilty to charges of concealing the pacemaker's defects. Less than five months after learning this fact, the son filed a products liability and wrongful death action against the manufacturer. The trial court dismissed the complaint on the ground that the wrongful death claim had not been brought within two years from the date of the decedent's death. The court of appeals affirmed.

{¶ 11} In a four-to-three decision, this court likewise affirmed the trial court's dismissal of the case and held that "[n]either fraud nor the discovery rule can toll R.C. 2125.02(D), Ohio's

statute setting forth the time within which to commence wrongful death actions." *Id.* at syllabus. In refusing to apply the discovery rule, we focused on the fact that a wrongful death claim is based upon the death of a person and is a special statutory action created by the General Assembly. We strictly construed the statutory language of R.C. 2125.02(D) (now R.C. 2125.02[D][1]), which states that "[a]n action for wrongful death shall be commenced within two years after the decedent's death," and held that the discovery rule is inapplicable, since the legislature did not engraft tolling language into the wrongful death statute.

{¶ 12} We further reasoned that the discovery rule has traditionally been limited to malpractice actions, which we said differ from wrongful death claims. With respect to malpractice claims, we reasoned that the injury may not be discovered immediately, whereas in wrongful death actions, the death of the person, which is the basic element of a wrongful death action, is a known factor, allowing the survivors to proceed on the decedent's behalf without delay. *Id.*, 61 Ohio St.3d at 218, 574 N.E.2d at 461. Based upon these reasons, we concluded that the General Assembly "intended that wrongful death actions be brought within two years regardless of the date of discovery of the cause of death." *Id.* at 215, 574 N.E.2d at 459.

{¶ 13} In reexamining this issue, we find that our analysis in *Shover* is flawed. To begin with, we incorrectly focused on the statutory language of the wrongful death statute and ignored the many policy considerations that have supported our application of the discovery rule in a variety of contexts.

{¶ 14} A wrongful death claim is not triggered merely by the death of a person, but by "the death of a person * * * *caused by wrongful act*." (Emphasis added.) R.C. 2125.01(A)(1); see, also, *Shover v. Cordis Corp.,* 61 Ohio St.3d at 220-221, 574 N.E.2d at 463, construing former R.C. 2125.01 (A. William Sweeney, J., dissenting). Therefore, in order for a wrongful death case to be brought, the death must be wrongful. The fact that a body was discovered and/or that a death took place is irrelevant unless there is proof that a defendant was at fault and caused the death. Death, in and of itself, does not trigger the running of the statute of limitations in a wrongful death case stemming from a murder.

{¶ 15} Furthermore, we were incorrect in *Shover* when we stated that the discovery rule was traditionally limited to malpractice claims and when we noted that, with respect to a wrongful death claim, the injury manifests itself upon the death of the person. Although the discovery rule was initially applied in the context of medical malpractice (*Melnyk v. Cleveland Clinic* [1972], 32 Ohio St.2d 198, 61 O.O.2d 430, 290 N.E.2d 916; *Oliver v. Kaiser Community Health Found.*), it has not been limited solely to that area. Instead, it has been applied in several other situations. See *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.* (S.D.Ohio 1986), 656 F.Supp. 49, 74 (fraud); *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101 (adoption); *Skidmore & Hall v. Rottman* (1983), 5 Ohio St.3d 210, 5 OBR 453, 450 N.E.2d 684 (legal malpractice); *Liddell v. SCA Services of Ohio* (1994), 70 Ohio St.3d 6, 635 N.E.2d 1233 (negligent exposure to toxic gas); *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 637 N.E.2d 870 (sexual abuse); *NCR Corp. v. U.S. Mineral Products Co.* (1995), 72 Ohio St.3d 269, 649 N.E.2d 175 (asbestos removal).

{¶ 16} In each of these cases in which we invoked the discovery rule, we found that the injury complained of did not manifest itself immediately. Therefore, rather than adhere to the rigid

application of a particular statute of limitations, we liberally interpreted the time of accrual of the cause of action until the plaintiff knew, or by the exercise of reasonable diligence should have known, that he or she had been injured by the conduct of the defendant. *Ault,* 70 Ohio St.3d at 115-116, 637 N.E.2d at 871. We reasoned that "statutes of limitations should not bar claimants before they have a reasonable basis for believing they have a claim." *NCR Corp. v. U.S. Mineral Products Co.*, 72 Ohio St.3d at 271, 649 N.E.2d at 177. In other words, we used the discovery rule " 'where the application of the general rule that a cause of action exists from the time the negligent act was committed would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence.' " *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d at 113, 5 OBR at 249, 449 N.E.2d at 440.

{¶ 17} Thus, the discovery rule was adopted to prevent inequities that occur when a statute of limitations is rigidly followed. Such inequities exist in a wrongful death action where the victim's survivors are not immediately aware that a wrongful death has occurred. Under these circumstances, if accrual occurs from the date of death, the survivors may not be given the benefit of the two full years in which to bring a suit or may be left without any remedy at law.[1]

{¶ 18} For instance, often, with a murder, law enforcement officials may easily discover that a murder has taken place. There may also be positive identification of the victim soon after the crime was committed. However, the crime may remain unresolved until well after the victim was killed and beyond two years after the victim's death. Under those circumstances, if the crime is not solved within two years from the date of death, then the survivors cannot pursue a wrongful death claim. Or, as was the case here, if death is the triggering event, then the two-year statute of limitations may begin to run even before the victim's family has learned the awful truth about their loved one. In this situation, under our holding in *Shover,* a person pursuing a wrongful death claim would not be given the full two years to commence an action.

{¶ 19} It is illogical to penalize the victim's survivors, who have already suffered a great loss, by shortening or extinguishing the time in which they may bring a wrongful death lawsuit. To do so merely rewards the criminal defendant. Although the defendant may be held accountable in a criminal court for the horrendous crime he committed, he can nonetheless escape civil liability, all at the expense of the victim's family, and simply because of the harsh application of a statute of limitations.

{¶ 20} In his dissent in *Shover*, 61 Ohio St.3d at 233, 574 N.E.2d at 471, Justice Douglas correctly pointed out the unfairness of holding that a statute of limitations accrues from the date of death, when he stated:

{¶ 21} "If * * * a wrongful death action stems solely from the wrongful death statute, then if the General Assembly decided to repeal Ohio's wrongful death statute, any tortfeasor who negligently injured another would need only be sure that his or her victim was dead in order for the tortfeasor to be absolved from civil liability. If Ohio's wrongful death statute remains in effect and is interpreted in the fashion that the majority today interprets R.C. 2125.02(D), a tortfeasor

---

1. Appellant also argues that the wrongful death statute violates the open courts provision of the Ohio Constitution. However, since we are applying the discovery rule to a wrongful death action, appellant may proceed with his cause of action and is not without a remedy. Therefore, this issue need not be discussed.

need only kill his or her victim and fraudulently conceal the cause of death for two years to be absolved from civil liability."

{¶ 22} We are unwilling to further condone such a ludicrous result. Since we find that our decision in *Shover* is inherently flawed and runs contrary to the dictates of logic and fairness, we now overrule it with today's decision. Accordingly, we hold that the discovery rule applies to toll R.C. 2125.02(D), the two-year statute of limitations for a wrongful death claim. In a wrongful death action that stems from a murder, the statute of limitations begins to run when the victim's survivors discover, or through the exercise of reasonable diligence, should have discovered, that the defendant has been convicted and sentenced for the murder.

{¶ 23} In this case, Sotka was sentenced for the murder of Angel Ormston in an order dated February 10, 1993. The two-year statute of limitations accrued on this date, giving appellant until February 10, 1995 in which to file his cause of action for wrongful death. Since a complaint was filed on February 6, 1995, we find that it was filed within the statute of limitations. Accordingly, we reverse the judgment of the court of appeals and remand the matter to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, RESNICK and PFEIFER, JJ., concur.

DOUGLAS, J., concurs separately.

MOYER, C.J., and COOK, J., dissent.

LUNDBERG STRATTON, J., dissents.

_____

**DOUGLAS, J., concurring.**

{¶ 24} I write separately in concurrence to note this historic day when a majority of this court takes the step to do away with what might very well be the worst case result in Ohio jurisprudence. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 574 N.E.2d 457, was unfair and wrong when it was decided and has remained so until this day. We now give the case the burial it so richly deserves.

{¶ 25} I also write to express my continued adherence to my dissent in *Shover* with regard to the faulty proposition that "wrongful death is a creature of statute." *Id.* at 229-233, 574 N.E.2d at 468-471. It should be obvious that death (wrongful) is the ultimate personal injury. If a cause of action for personal injury (trespass on the case) has been constitutionally preserved (right to trial by jury and open courts), then it follows that the right to bring a cause of action for wrongful death is also preserved and protected.

{¶ 26} Finally, add to all of this that a cause of action for wrongful death has its own special constitutional provision (Section 19a, Article I, Ohio Constitution), and it should be obvious that with or without a statute on wrongful death, the cause of action exists as it did at common law. Given this, someday maybe we will be able to straighten out the punitive damages question as it relates to wrongful death.

{¶ 27} I concur in the salutary syllabus, opinion, and judgment of the majority.

_____

**MOYER, C.J., dissenting**.

{¶ 28} As the majority states, there are few events more tragic than the abduction and killing of a loved one. In this case, nearly five months passed from the time Angel C. Ormston was seen alive to the time her body was discovered. There is no doubt great pain has been endured by her family. However, we, as members of the third branch, are required to temper our empathy by upholding our primary duty to interpret the law as applied to legal issues presented to us. As I stated in my dissent in *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 119-120, 637 N.E.2d 870, 874, "[a] case born of a dispute between two parties may require a decision with far-reaching and broad application to all of society." It is for that reason that we must exercise restraint in those cases where emotion tempts us to expand the use of our powers.

{¶ 29} The majority, in overruling *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 574 N.E.2d 457, relies primarily on public policy considerations in arriving at its determination that the discovery rule applies to toll the statute of limitations that governs wrongful death claims. According to the majority opinion, *Shover* was wrongly decided because "we incorrectly focused on the statutory language of the wrongful death statute and *ignored the many policy considerations that have supported our application of the discovery rule in a variety of contexts."* (Emphasis added.) The law of this court creating the discovery rule, *stare decisis*, and my respect for separation of powers cause me to respectfully but vigorously dissent.

I

{¶ 30} The expansive holding adopted by the majority today could not be more illustrative of the harm effected upon our jurisprudence when the judiciary does not follow the principle that courts are ill suited and not designed to substitute their policy judgment for that clearly stated by the legislature. See *Japan Whaling Assn. v. Am. Cetacean Soc.* (1986), 478 U.S. 221, 230, 106 S.Ct. 2860, 2866, 92 L.Ed.2d 166, 178. By overruling *Shover*, we improperly involve the judiciary in matters that exclusively and fundamentally belong to the legislative branch of government. At the same time, we undermine our own doctrine of *stare decisis*.

{¶ 31} The statute at issue here, R.C. 2125.02(D), is clear and unambiguous — "An action for wrongful death shall be commenced within two years after the decedent's death." The common and ordinary usage of these words suggests only one possible meaning: that the General Assembly intended that causes of action for wrongful death be brought within two years after the death of the decedent. It is axiomatic that courts do not resort to construction in the absence of ambiguous language contained in a statute. *Ohio Dental Hygienists Assn. v. State Dental Bd.* (1986), 21 Ohio St.3d 21, 23, 21 OBR 282, 284, 487 N.E.2d 301, 303; *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus; R.C. 1.49.

{¶ 32} Where a statute is clear and unambiguous, the court must enforce the statute as written. The court may not add to or subtract from the language of the statute. *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 4, 12 O.O.3d 1, 2-3, 387 N.E.2d 1222, 1224.

{¶ 33} Rather than apply these well-established principles, the majority has added the discovery rule to the statute. Under the majority opinion, the statute now effectively reads, "An action for wrongful death shall be commenced within two years after discovery of the decedent's

death, or, where the death results from a murder, an action for wrongful death shall be commenced within two years after discovery that a person was convicted and sentenced for the murder."

{¶ 34} The majority does not state what portion of R.C. 2125.02(D) it finds to be unclear or ambiguous. In the absence of such an analysis, the majority supports its position only by discussing the "many policy considerations that have supported our application of the discovery rule in a variety of contexts." The majority states, "It is illogical to penalize the victim's survivors who have already suffered a great loss, by shortening or extinguishing the time in which they may bring a wrongful death lawsuit. To do so merely rewards the criminal defendant. Although the defendant may be held accountable in a criminal court for the horrendous crime he committed, he can nonetheless escape civil liability, all at the expense of the victim's family, and simply because of the harsh application of a statute of limitations."

{¶ 35} If such a rationale were applied to every instance where a prospective plaintiff misses the statutory time for filing a complaint, we would declare every statute of limitations to be invalid. I do not necessarily disagree with the majority's belief that the application of R.C. 2125.02(D) may occasionally be unfair, but our only duty here is to give the words of the statute their plain and ordinary meaning unless otherwise defined. *Coventry Towers, Inc. v. Strongsville* (1985), 18 Ohio St.3d 120, 122, 18 OBR 151, 152, 480 N.E.2d 412, 414. Had the General Assembly intended to enact a statute that provided greater consideration to the views expressed by the majority, it would have done so. Instead, the General Assembly enacted R.C. 2125.02(D) in a way that reflects a preference of the public policy of finality over the policies discussed by the majority.

{¶ 36} Just seven years ago, in *Shover*, we held that the discovery rule was not applicable to causes of action arising under the wrongful death statutes. We also stated that " ' "[i]t is well settled * * * that the legislature has the power to increase the period of time necessary to constitute a limitation, and also to make it applicable to existing causes of action, provided such change is made before the cause of action is extinguished under the pre-existing statute of limitations." ' " *Shover*, 61 Ohio St.3d at 218-219, 574 N.E.2d at 462. Accordingly, we concluded that "had the General Assembly intended to apply the discovery rule to toll R.C. 2125.02(D), it could have achieved this objective legislatively." *Shover* at 219, 574 N.E.2d at 462.

{¶ 37} Today, a majority of this court arrives at exactly the opposite conclusion. Yet the General Assembly has not expanded the limitations period in the statute, nor have the words of the statute changed substantially since *Shover* was decided. When public policy considerations are placed aside, it is apparent that there are no reasons for disturbing the settled point of law decided in *Shover*. In *Collins v. Yanity* (1968), 14 Ohio St.2d 202, 207, 43 O.O.2d 301, 304, 237 N.E.2d 611, 614, we stated that "an action for wrongful death is brought pursuant to * * * Sections 2125.01 and 2125.02, Revised Code, which create the right of action, define it and *specify the time of action within which such action must be brought*." (Emphasis added.) Rather than overrule prior case law for reasons that are based primarily upon public policy grounds, a restrained judiciary should resist the temptation to expand the meaning of statutes beyond their clear, unambiguous words.

II

{¶ 38} The majority cites several cases to support its conclusion that the discovery rule may be applied to circumstances where the injury complained of does not manifest itself

immediately. Specifically, the majority cites *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.* (S.D.Ohio 1986), 656 F.Supp. 49, 74; *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101; *Skidmore & Hall v. Rottman* (1983), 5 Ohio St.3d 210, 5 OBR 453, 450 N.E.2d 684; *Liddell v. SCA Services of Ohio* (1994), 70 Ohio St.3d 6, 635 N.E.2d 1233; *Ault v. Jasko*; and *NCR Corp. v. U.S. Mineral Products Co.* (1995), 72 Ohio St.3d 269, 649 N.E.2d 175. None of the cases cited by the majority supports its decision.

{¶ 39} In *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 114, 5 OBR 247, 250, 449 N.E.2d 438, 441, this court stated that the rationale for applying the discovery rule was that the rule "eases the unconscionable result to innocent victims who by exercising even the highest degree of care *could not have discovered the cited wrong*." (Emphasis added.) In four of the six cases cited by the majority, we determined that a party would be aware, or through the exercise of reasonable diligence, should be aware, that a wrong was committed against them upon discovery of the injury or harm. See *Skidmore & Hall*, at syllabus; *Liddell*, at syllabus; *Ault,* at paragraph two of the syllabus; *NCR*, at paragraph one of the syllabus. In *Cincinnati Gas*, the federal court made a similar determination in a case involving fraud. *Cincinnati Gas & Elec. Co.*, at 74.

{¶ 40} The holdings of this court in *Skidmore, Liddell*, *Ault*, and *NCR* plainly indicate that discovery of the injury is the defining event that triggers the running of the statute of limitations. The federal court stated likewise in *Cincinnati Gas*. In other words, until a person is aware that a wrong has been committed against him or her, the statute of limitations is tolled. Such a person must generally be aware that there has been an invasion of right that has damaged him or her in some way. Applying the most expansive interpretation of that principle here, the discovery rule would have tolled the running of the statute of limitations until December 15, 1992, which was the date the body of Ormston was found. More importantly, this was the date on which the county coroner indicated that the cause of death was "multiple stab wounds of trunk." Thus, that date serves as the point in time at which the possibility first arose that a death was "caused by wrongful act." See R.C. 2125.01(A)(1).

{¶ 41} The coroner's finding that the victim died of multiple stab wounds was sufficient to raise the question that a wrongful act had caused the death. Thus, at that time there could have been no doubt the plaintiffs became aware that a wrong had been committed against them. They were aware, or should have been aware, on December 15, 1992, that they had suffered an injury that could serve as the basis for an action in wrongful death. Given the tragic discovery on that date, it is simply not plausible that the plaintiffs here were not aware that a wrong had been committed against them until Sotka, the defendant, was convicted and sentenced.

{¶ 42} In *Burr,* the remaining case cited by the majority, we held that the wrongdoer must be discovered, as well as the injury complained of, before the statute begins to run. *Burr*, at paragraph three of the syllabus. The underlying suit in *Burr*, however, was a cause of action for fraud, which is governed by R.C. 2305.09. This court interpreted that statute to mean that a cause of action for fraud does not accrue until both the fraud and the wrongdoer are discovered. In the instant case, there are no similar statutory provisions tolling the cause of action for wrongful death. Moreover, even if the holding of *Burr* did apply, the statute of limitations still would have commenced more than two years prior to the date that the plaintiffs filed this wrongful death suit. Sotka was arrested on December 31, 1992. He was indicted in January 1993. These are just two

dates, among several points in time, at which the plaintiffs were made aware or should have been aware of the identity of Sotka as a potential wrongdoer prior to his conviction and sentence. Unlike the date of Sotka's conviction and sentencing, these events occurred more than two years from the date of the filing of this suit.

{¶ 43} Given the lack of support for the majority's reasoning in the case law, I am left to conclude that the rule established today deviates from the main principle of the discovery rule— that the statute of limitations for a claim be tolled until discovery of the injury. See *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 89, 4 OBR 335, 339, 447 N.E.2d 727, 731.

{¶ 44} By purporting to rely on our prior case law, the majority effectively establishes a new definition of "injury" as it pertains to the discovery rule. The majority opinion states that "[i]n essence, the running of the limitations period is delayed until triggered by a 'cognizable event' that alerts the plaintiff that he or she was injured by the defendant." The rule crafted today by the majority recognizes the conviction and sentencing of a defendant as the "cognizable event" that first alerted the plaintiffs here of an injury. Following the logic of the majority opinion, it would appear that the plaintiffs were unaware that a wrong had been committed, resulting in injury to them, until Sotka, the defendant, was proven, beyond a reasonable doubt, to have committed the murder.

{¶ 45} I cannot agree with this conclusion. Surely, the survivors of a murder victim become cognizant that a wrong has been committed against them long before the conviction and sentencing of the perpetrator. A plaintiff may come to this conclusion upon learning of the victim's death, or when facts are determined that raise a possibility that the death was caused by a wrongful act. See R.C. 2125.01(A)(1). In addition, the survivor surely endures pain and suffering long before the criminal trial of the accused. The majority's view implies that there is no grief, no sense of loss, and no deprivation of love and affection arising from the loss of a loved one until a court determines the identity of a murderer. Such an implication, of course, defies common knowledge.

### III

{¶ 46} Equally troubling is the majority's failure to distinguish between the requisite standard of proof in civil wrongful death actions and the standard applicable to criminal actions. The wrongful death statute provides a civil remedy to eligible persons when a death is "caused by wrongful act * * *." R.C. 2125.01(A)(1). It is elementary that the usual standard of proof in most civil actions is that of preponderance of the evidence. See *Felton v. Felton* (1997), 79 Ohio St.3d 34, 679 N.E.2d 672; *Walden v. State* (1989), 47 Ohio St.3d 47, 547 N.E.2d 962; *White v. Ohio Power Co.* (1960), 171 Ohio St. 148, 12 O.O.2d 169, 168 N.E.2d 314. The elements of a wrongful death claim which must be shown pursuant to this standard are (1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of the duty and the death. *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449, 454.

{¶ 47} The majority states that the event of a death is "irrelevant unless there is proof that a defendant was at fault and caused the death." The applicable standard of proof for finding a person at fault in a wrongful death action, however, is that of preponderance of the evidence. The determination to be made is whether the defendant is *civilly liable* (by a preponderance of the evidence) for causing the death of another, not whether the defendant is *guilty* of committing a

crime for which the penalty is a deprivation of his or her life or liberty. See *Shrader v. Equitable Life Assur. Soc. of the United States* (1985), 20 Ohio St.3d 41, 47, 20 OBR 343, 348, 485 N.E.2d 1031, 1036. By concluding that the statute does not run, however, until the defendant is convicted and sentenced, the majority confuses the different standards of proof required for wrongful death actions and murder. This is troublesome for several reasons.

{¶ 48} First, the majority's rule prevents the statute from running in a civil action until a person has been convicted and sentenced, under the standard of proof of beyond a reasonable doubt, in a criminal action. This rule thereby implies that a plaintiff cannot know that a wrongful act was committed for which civil liability may be established under a preponderance of evidence standard, until that act is proven beyond a reasonable doubt to have happened at a criminal proceeding. While it is true that the higher criminal standard encompasses the lower civil standard, it does not automatically follow that there are no facts available to a plaintiff to form the basis of a civil claim until a person is convicted and sentenced at a criminal proceeding. Plainly, facts discerned during the course of the criminal trial may form the basis of a wrongful death claim, regardless of whether the outcome of the criminal proceeding results in a conviction and sentencing.

{¶ 49} I respectfully submit that the effect of the majority's rule defies generally accepted principles. A potential plaintiff may certainly be aware of facts that would allow him or her to pursue a wrongful death action, even though those facts may not be sufficient to convict a person beyond a reasonable doubt. Those facts are often known long before a person is even tried on a criminal charge. It is dubitable that a potential plaintiff would remain completely unaware of facts that could form the basis for a wrongful death claim until a person is convicted *and* sentenced for murder.

{¶ 50} The majority states that "[a] crime may remain unresolved until well after the victim was killed and beyond two years after the victim's death." Under those facts, according to the majority, the survivors cannot pursue a wrongful death claim. I disagree. The resolution of a criminal investigation should not be a prerequisite to an action in wrongful death. In some instances, there may be insufficient evidence to convict, or even charge, a person for criminally causing the death of another. However, under the lower preponderance of evidence standard, the same evidence may demonstrate civil liability in wrongful death pursuant to R.C. 2125.01(A)(1).

{¶ 51} To the extent that the identity of the defendant is not determined within the period of the statute of limitations, potential plaintiffs may preserve their rights by filing a complaint naming the defendant as unknown and then subsequently filing an amended complaint if the identity of the defendant is discovered pursuant to Civ.R. 3 and 15(D). In *Amerine v. Haughton Elevator Co.* (1989), 42 Ohio St.3d 57, 59, 537 N.E.2d 208, 210, we determined that the amendment of a complaint against a defendant identified by a fictitious name, which adds the real name of the defendant, relates back to the filing of the original complaint under Civ.R. 15(D).[2]

---

2. Civ.R. 15(D) provides, "When the plaintiff does not know the name of a defendant, that defendant may be designated in a pleading or proceeding by any name and description. When the name is discovered, the pleading or proceeding must be amended accordingly. The plaintiff, in such case, must aver in the complaint the fact that he could not discover the name. The summons must contain the words 'name unknown,' and a copy thereof must be served personally upon the defendant."

Pursuant to that rule and Civ.R. 3(A), service must be obtained within one year of the filing of the original complaint. Service may be made beyond the statute of limitations period for filing the action as long as the original complaint was filed before expiration of the limitations period. *Amerine*, 42 Ohio St.3d at 59, 537 N.E.2d at 210.

{¶ 52} An application of those rules here illustrates that the plaintiffs could have, but did not, avail themselves of this opportunity. Considering the two-year statute of limitations that applies to wrongful death actions pursuant to R.C. 2125.02(D), the plaintiffs could have filed a wrongful death action naming a fictitious defendant any time between July 31, 1992 (the date of disappearance) and August 1, 1994.[3] The plaintiffs would have then had one year from the filing of the original complaint, or until as late as August 1, 1995, to discover the real name of the defendant and amend their complaint pursuant to Civ.R. 15. Upon learning of Sotka's arrest in December 1992, or indictment in January 1993, the plaintiffs had ample time to file the original complaint, amend their complaint, and serve Sotka within the one-year period required for commencement of the action. Civ.R. 3.

{¶ 53} Similarly, if the date of death was determined to be December 15, 1992 (the date of discovery of the body), the plaintiffs would have had an even longer period of time to amend a complaint originally naming a fictitious defendant. In such case, the plaintiffs could have filed a John Doe suit as late as December 15, 1994 and would have had until as late as December 15, 1995, to amend the complaint and serve Sotka — approximately two years and ten months after which the identity of Sotka was easily known due to his conviction.

IV

{¶ 54} The majority's rule completely eviscerates the statute of limitations in those situations where a defendant is never convicted of murder. A plain reading of the majority opinion compels the conclusion that the statute *never* runs if a defendant is acquitted, or if no person is ever formally charged with murder. Yet the language of the statute cannot be clearer—"An action for wrongful death shall be commenced within two years after the decedent's death." R.C. 2125.02(D). This court does not sit to strip statutory language of its meaning. "[I]t is the duty of courts to accord meaning to each word of a legislative enactment if it is reasonably possible to do so. It is presumed that each word in a statute was placed there for a purpose." *State ex rel. Bohan v. Indus. Comm.* (1946), 147 Ohio St. 249, 251, 34 O.O. 151, 152, 70 N.E.2d 888, 889.

{¶ 55} Additionally, I am uncertain whether the statute would run, under the result reached today, in cases where the potential defendant in a wrongful death action is convicted and sentenced not for murder, but for a lesser crime involving the taking of a life, such as voluntary or involuntary manslaughter.

{¶ 56} The foregoing analysis indicates the pitfalls of commingling the civil standard required to demonstrate that a death was caused by a wrongful act with the criminal standard of proof and the terms defining crimes that involve the taking of a life. However laudable the majority's intentions may be in attempting to remedy the perceived inequities of rigidly applying the statute of limitations in wrongful death actions, even the most expansive application of the

---

3. Pursuant to Civ.R. 6, the plaintiffs would have had until August 1, 1994, to file their original complaint, because the last day of the limitations period (July 31, 1994) was a Sunday.

discovery rule here cannot toll the statute to the benefit of the plaintiffs. There is no adequate analytical or practical basis to support the proposition that the "cognizable event" alerting the plaintiffs of an injury against them occurred only upon the conviction and sentencing of Sotka for murder. The plaintiffs were aware that Angel Ormston's death was potentially caused by a wrongful act committed by Sotka long before criminal judgment.

V

{¶ 57} The rule crafted by the majority today is unique. None of our sister jurisdictions has established a standard resembling paragraph two of the syllabus.

{¶ 58} A majority of the jurisdictions that have considered the issue do not apply the discovery rule to wrongful death actions. In *Leo v. Hillman* (1995), 164 Vt. 94, 665 A.2d 572, the Supreme Court of Vermont refused to apply the discovery rule to a wrongful death claim similar to the facts presented here. In *Leo*, the victim's body was missing and was not known to be dead or alive. The statute of limitations was also similar to our statute, providing, in relevant part, that "[s]uch action shall be brought in the name of the personal representative of such deceased person and commenced within two years from his decease." 14 V.S.A. Section 1492(a). The court held that this statute was clear on its face and neither stated nor implied a discovery rule, instead stating that, "['']Where * * * the Legislature has clearly and unequivocally prescribed that a cause of action accrues on the occurrence of a specified event, the courts are without power to fashion a different rule for determining when a cause of action accrues.[']" 164 Vt. at 99, 665 A.2d at 576. The court cited several cases to support its conclusion, including the case the majority overrules today, *Shover*.

{¶ 59} Similarly, in *Fulton Cty. Admr. v. Sullivan* (Fla.1997), ___ So.2d ___, 1997 WL 589312, the Supreme Court of Florida refused to apply the discovery rule to a two-year limitations period for instituting a cause of action for wrongful death, stating that the "plain language of [the tolling statute] does not provide for the tolling of the statute of limitations in cases in which the tortfeasor fraudulently conceals his or her identity." *Id*. at ___, WL at *3. The court acknowledged that the statute did require unjust results in some instances, but that it was within the province of the legislature to avoid such results by amending the statute. *Id*. at ___, WL at *4.

{¶ 60} In *Shover*, we refused to apply our considerable powers simply to eliminate unfair results created by legislative inaction. The soundness of the precedent we established there is illustrated by the many jurisdictions in addition to Florida and Vermont that do not apply the discovery rule to wrongful death claims where the statute of limitations is plain on its face. *Moyer v. Rubright* (1994), 438 Pa.Super. 154, 651 A.2d 1139; *Miles v. Ashland Chem. Co.* (1991), 261 Ga. 726, 410 S.E.2d 290; *Wyness v. Armstrong World Industries Inc.* (1989), 131 Ill.2d 403, 137 Ill.Dec. 623, 546 N.E.2d 568; *Schultze v. Landmark Hotel Corp.* (Iowa 1990), 463 N.W.2d 47; *Pobieglo v. Monsanto Co.* (1988), 402 Mass. 112, 521 N.E.2d 728; *Presslaff v. Robins* (1979), 168 N.J.Super. 543, 403 A.2d 939; *Eldridge v. Eastmoreland Gen. Hosp.* (1989), 307 Ore. 500, 769 P.2d 775; *Diaz v. Westphal* (1997), 40 Tex. Sup.Ct. J. 434, 941 S.W.2d 96. See, also, *Farmers Bank & Trust Co. of Bardstown v. Rice* (Ky.1984), 674 S.W.2d 510; and *Williams v. Edmondson* (1975), 257 Ark. 837, 520 S.W.2d 260.

{¶ 61} Even though a minority of the jurisdictions considering this issue have applied the discovery rule, *none* of those jurisdictions applies the rule so expansively that the statute will run

only when the victim's survivors discover that a defendant has been convicted and sentenced for murder. Many jurisdictions apply the rule only when the defendant has fraudulently concealed the cause of death. See *DeCosse v. Armstrong Cork Co.* (Minn.1982), 319 N.W.2d 45; *Geisz v. Greater Baltimore Med. Ctr.* (1988), 313 Md. 301, 545 A.2d 658.

{¶ 62} That the majority's statement of law extends beyond the outer limits of how the discovery rule can be applied is demonstrated by an analysis of those jurisdictions that apply the discovery rule but impose a "reasonable diligence" requirement on the part of the plaintiff. In *Allen v. Washington* (1992), 118 Wash.2d 753, 826 P.2d 200, the court applied a due diligence requirement and determined the plaintiff could have exercised due diligence by keeping in contact with local police or by reading newspaper articles. *Id.* at 758-759, 826 P.2d at 203.

{¶ 63} In *Alaska Dept. of Corrections v. Welch* (Alaska 1991), 805 P.2d 979, the court determined that the statute would run " 'when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin inquiry to protect his or her rights.' " *Id.* at 982. Although the suit in *Welch* involved a claim for negligent supervision of a probationer, the facts are similar to the instant case. In *Welch,* the parents of a murdered child wanted the statute to commence only when the defendant pled guilty to the murder. In refusing to establish the rule adopted by the majority today, that court stated that the parents had knowledge of facts prior to the date the defendant pled guilty, and thus had sufficient notice of a possible cause of action well before the defendant pled guilty. *Id.* Among those facts were press reports about the criminal case. *Id.* at 981.

{¶ 64} In this case, there was a newspaper article published in the The Plain Dealer on January 13, 1993 linking Sotka to the murder. Sotka was arrested on December 31, 1992 and indicted by a grand jury in January 1993. Thus, the plaintiffs were put on sufficient notice that a cause of action for wrongful death had accrued long before the conviction and sentencing of Sotka.

{¶ 65} The only requirement of diligence established by the majority here is that plaintiffs should exercise reasonable diligence in discovering that a defendant is convicted and sentenced for murder. The import of this statement is that plaintiffs are effectively absolved from any responsibility to affirmatively determine facts that would form the basis of their civil cause of action. The only responsibility borne upon plaintiffs is to "discover" that a criminal conviction and sentencing has occurred. That is a lower standard than we have applied in all other cases in which the discovery rule was an issue. If this court is to apply the discovery rule to wrongful death claims, the concept of reasonable diligence should accord with our prior case law and that of other jurisdictions, *i.e.*, that a plaintiff bear some meaningful, affirmative responsibility to determine facts that would form the basis for his or her cause of action.

{¶ 66} For the foregoing reasons, I respectfully dissent.

COOK, J., concurs in the foregoing dissenting opinion.

———————————

LUNDBERG STRATTON, J., dissenting.

{¶ 67} Although I agree that the discovery rule should apply to wrongful death actions involving a murder, I do not agree that the cause of action should accrue upon the *conviction and sentencing* of the defendant who is responsible for the murder. Instead, I believe a cause of action

for wrongful death should accrue when the *injury* is discovered, *i.e.*, that a murder or other foul play has resulted in a person's death.

**{¶ 68}** This court has historically applied the discovery rule to situations where the injury was not, or could not have been, discovered through the exercise of reasonable diligence. I would apply that same rationale to wrongful death situations involving murder or foul play. This approach would be consistent with precedent.

**{¶ 69}** I agree with Chief Justice Moyer that the majority's extension of the discovery rule deviates from the main principle of the discovery rule — that the statute of limitations for a claim be tolled until discovery of the injury — and creates an entirely new standard that depends upon proof of murder in a criminal case, not discovery of the injury.

**{¶ 70}** I also agree with Chief Justice Moyer that the requirement of a conviction and sentencing confuses the requisite standards of proof in a civil wrongful death action and in a criminal prosecution. In many cases, the victim's family knows, or should have known through the exercise of reasonable diligence, who committed the murder, yet the statute of limitations for a wrongful death action now runs only if the person responsible is convicted and sentenced under the more difficult "reasonable doubt" standard of proof in criminal cases. The opinion is silent as to what happens to the two-year statute of limitations where the family may know who is responsible for a victim's death, yet the person who caused the death has evaded the criminal justice system through a technicality or failure of proof of guilt beyond a reasonable doubt. What happens if the person who is charged with murder is convicted of a lesser charge, such as negligent homicide or involuntary manslaughter? Does the majority's discovery rule apply only to murder convictions?

**{¶ 71}** There may be sufficient evidence to find a person civilly liable for causing the death of another by murder even though a criminal conviction is not obtained. The O.J. Simpson trials are such an example. Simpson was found not guilty of murder in his criminal case but was later determined to be civilly liable for causing the deaths of his former wife and Ron Goldman.

**{¶ 72}** The factual components that result in one's conviction for a lesser charge may form the basis for a finding of civil liability for the wrongful death of another. For example, a defendant may avoid a murder conviction, yet be found guilty of involuntary manslaughter because of a claim that the deceased provoked the defendant into a fit of sudden rage. However, such facts may be sufficient to support a finding of civil liability for wrongful death if the defendant's actions exceeded the culpability of the decedent's actions.

**{¶ 73}** I believe that applying the discovery rule to the actual date the injury is discovered, *i.e.,* that a murder or other foul play has resulted in the death of another, is logically sound and consistent with precedent. The discovery of a murdered person is a cognizable event sufficient to trigger the statute of limitations. At that point, the family knows, or with reasonable diligence should know, that a wrongful death has occurred. A person's disappearance is insufficient because the person may have voluntarily disappeared or may have been kidnapped but is still alive. Even the discovery of a dead body may not be sufficient when accident and suicide remain possible explanations. A legal determination by the county coroner that the death is the result of a homicide may be necessary to establish that a wrongful death has, in fact, occurred.

**{¶ 74}** This position is consistent with our previous holdings in *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 114, 5 OBR 247, 250, 449 N.E.2d 438, 441; *Skidmore & Hall v. Rottman* (1983), 5 Ohio St.3d 210, 5 OBR 453, 450 N.E.2d 684; *Liddell v. SCA Services of Ohio* (1994), 70 Ohio St.3d 6, 635 N.E.2d 1233; *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 637 N.E.2d 870; and *NCR Corp. v. U.S. Mineral Products Co*. (1995), 72 Ohio St.3d 269, 649 N.E.2d 175, and could equitably be applied to *all* wrongful death actions caused by murder or foul play, not just those proven beyond a reasonable doubt in the criminal context. If there is to be a further extension beyond our traditional discovery rule, the General Assembly should debate the public policy issues and decide the appropriate boundaries of any further extension.

**{¶ 75}** While I applaud the goal of the majority to allow an injured party to seek compensation, I cannot agree with its solution of creating an extension of the discovery rule. Therefore, I respectfully dissent.