DECISION AND JUDGMENT ENTRY
{¶ 1} Cecil R. Carter appeals his misdemeanor theft conviction in the Circleville Municipal Court. On appeal, Carter contends that the trial court's unfair admonishment to the two co-defendants, regarding their right against self-incrimination, effectively discouraged them from testifying for him. Because Carter waived this issue by failing to raise it in the trial court, we do not address it. Carter next contends that his theft conviction is against the manifest weight of the evidence. Because substantial evidence supports his conviction, we disagree. Accordingly, we overrule Carter's two assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} The state charged Carter with the theft of four pairs of jeans. He entered a not guilty plea and the matter proceeded to a bench trial. *Page 2 
 {¶ 3} At trial, the state called five witnesses. The testimony indicated that Carter entered the Tractor Supply store in Circleville wearing a jacket. He went to the clothing department where employee Rita Hayes saw Carter moving his arms against his jacket in such a way that she thought that he was trying to conceal something under his jacket. She saw Carter walk past the cash registers and out of the store without stopping to pay for any items. Once outside, a pair of jeans fell from under Carter's jacket. Hayes noticed that the jeans still had a sizing strip. Carter picked the jeans up and re-concealed the jeans under his jacket. He walked quickly to a car parked on the north end of the parking lot and entered the back passenger side. Hayes noticed a woman in the front passenger seat and a man in the driver's seat. The car sped off and headed south on U.S. Route 23.
 {¶ 4} Carter's actions drew the attention of another customer, Jeff Eversole, who was a former police officer. He got in his vehicle and pursued Carter using his cell phone to relay Carter's location to law enforcement. At one point, Carter's vehicle reached 80 miles per hour. Eventually, the Ross County Sheriff's Department stopped Carter's vehicle on Parrott Road, close to where Carter resides.
 {¶ 5} Pickaway County Deputy Sheriff John Schleich did an inventory search of the vehicle. He found four pairs of Carhartt denim jeans in the back passenger seat. The jeans still had the security tags attached, with one pair having dye on them from broken security dye packs. *Page 3 
 {¶ 6} Circleville Police Officer Glenn Williams returned the jeans to Tractor Supply where Hayes and the store manager, Robert Varvel, identified Tractor Supply's ink tags and price stickers from the jeans.
 {¶ 7} While officers booked Carter into the Circleville jail, they found a sheet of paper (similar to a shopping list) that had a notation of size 38 x 32 jeans. This was the same size as the recovered four pairs of jeans.
 {¶ 8} Before Carter testified at his trial, he planned to call the two co-defendants, i.e., his mother and step-father, as witnesses. When he called his mother, Mrs. Carter, the judge immediately admonished her and the next witness, Curtis Carter (step-father):
 JUDGE: Well wait a minute. Let me admonish her first. Mrs. Carter, you're charged in this crime as well do you understand that? And you're being asked to testify in this case in which case you would be placed under oath. And if you're placed under oath you might be asked questions that incriminate you understand that? And so you have an option. You may choose to testify but if you do you're at risk okay? Or you may choose not to testify understand that?
 MRS. CARTER: Uh-huh.
 JUDGE: If you choose to testify you may choose to stop answering questions at any time if you feel that you are being at risk. Understand that? Do you have any questions for me about that?
 MRS. CARTER: No.
 JUDGE: No. And so would you like to testify? Would not like to testify or what?
 MRS. CARTER: I don't want to testify.
 JUDGE: You don't want to testify. You're excused. Who's next? Curtis? Did you understand my explanation to *Page 4 
Mrs. Carter? Uh-huh. And you understand that the defense lawyer would call you as a witness.
 CURTIS CARTER: Right.
 JUDGE: And that you're also charged in this offense and if you choose to testify you would be under oath and somebody could ask you a question that might place you at risk. You understand that? You have any questions about that for me? Do you wish to testify or not testify?
 CURTIS: I'm not testifying.
 JUDGE: You're not testifying. Okay.
Carter did not object and proceeded to testify.
 {¶ 9} Carter testified that he received the four pairs of jeans from a buddy in South Salem and traveled to Circleville to return them for money. He did not have a receipt or a Tractor Supply bag. He indicated that the jeans did not fit him. Once inside the store, he noticed the ink security tags for the first time and promptly left the store because he did not want anyone to think that he stole them. On cross-examination, he testified that he did not remember being back in the clothing department. His testimony contradicted that of employee Hayes, when she testified that he held the jeans in his hands.
 {¶ 10} The court found Carter guilty and sentenced him accordingly.
 {¶ 11} Carter appeals and asserts the following two assignments of error: I. "THE TRIAL COURT ERRED BY UNFAIRLY ADMONISHING THE DEFENSE WITNESSES REGARDING THEIR RIGHT AGAINST SELF [INCRIMINATION] EFFECTIVELY DISCOURAGING THE WITNESSES FROM TESTIFYING THEREBY DEPRIVING APPELLANT OF DUE PROCESS OF LAW BY DENYING HIM THE OPPORTUNITY TO PRESENT WITNESSES IN HIS OWN DEFENSE IN VIOLATION OF SECTIONS 10 *Page 5 
AND 16 OF ARTICLE 1 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION." AND, II. "THE TRIAL COURT VIOLATED CECIL CARTER'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR THEFT IS (SIC) AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. SECTION 16, ARTICLE 1 OF THE OHIO CONSTITUTION; FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 II. {¶ 12} Carter contends in his first assignment of error that the trial court erred when it unfairly admonished Carter's two co-defendants before they testified regarding their right against self-incrimination. Carter maintains that the court's admonishment effectively discouraged the two witnesses from testifying on his behalf. He argues that the court's admonishment is similar to the admonishment in Webb v.Texas (1972), 409 U.S. 95, 98 (held that judge's threatening admonishment effectively drove the defendant's only witness off the stand).
 {¶ 13} Here, we find that Carter failed to bring this issue to the attention of the trial court at the time that it occurred. It is axiomatic that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. Shover v.Cordis Corp. (1991), 61 Ohio St.3d 213, 220, overruled on other grounds in Collins v. Sotka (1998), 81 Ohio St.3d 506. We will not consider any error a party failed to bring to the trial court's attention at a time when the trial court could have avoided or corrected the error.Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210, State v.Glaros *Page 6 
(1960), 170 Ohio St. 471, 166 N.E.2d 379, paragraph one of the syllabus. Therefore, Carter waived this issue on appeal.
 {¶ 14} Even if Carter had preserved this issue for appeal or requested us to consider plain error, we would not find error.
 {¶ 15} A trial court has a duty to safeguard a co-defendant's constitutional rights by informing him or her of his or her right against self incrimination. See, e.g., State v. Oden (July 21, 1977), Cuyahoga App. No. 36241, p. 6. Here, the two witnesses were co-defendants. This difference distinguishes Webb, which did not involve a co-defendant.
 {¶ 16} The Webb trial court told the witness in part, "If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the likelihood is that you would get convicted of perjury[.]" The witness chose not to testify. On appeal, the United States Supreme Court held that the trial judge's threatening admonishment effectively drove the defendant's only witness off the stand.
 {¶ 17} Here, the admonishment is not similar to the admonishment inWebb. The trial court's admonishment to Carter's two co-defendants did not reach the threatening level. Therefore, the court did not commit any error, let alone plain error, when it admonished the two co-defendants.
 {¶ 18} Accordingly, we overrule Carter's first assignment of error.
 III. *Page 7 {¶ 19} Carter contends in his second assignment of error that his theft conviction is against the manifest weight of the evidence. Specifically, he maintains that the evidence did not show that the jeans came from the Circleville Tractor Supply store as opposed to another Tractor Supply store. He claims that the manager indicated that he can tell that the jeans are Tractor Supply goods but nothing identifies them as coming from the Circleville store.
 {¶ 20} In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995), 103 Ohio App.3d 368,370-71; State v. Martin (1993), 20 Ohio App.3d 172, 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v.Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 21} The trier of fact is free to believe or disbelieve a witness's testimony in whole or in part. State v. Wagner (Feb. 29, 2000), Pickaway App. No. 99CCA23, citing Swanson v. Swanson (1976), 48 Ohio App.2d 85,97. Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative *Page 8 
value and therefore should be subjected to the same standard of proof."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus.
 {¶ 22} Here, employee Hayes saw Carter in the clothing department. He appeared to conceal something under his jacket. She saw him leave the store without paying for any items, and she saw him drop a pair of jeans with a sizing strip on them. She watched him hurry to a waiting car and enter the back passenger seat. She observed the car speed away. Eventually, officers found four pairs of Carhartt jeans in the back passenger seat. Hayes and the manager identified the jeans as jeans that came from Tractor Supply.
 {¶ 23} Carter claims he received the four pairs of jeans from a buddy and went to Circleville to return them for money. Once in the store, he saw the white dye packs for the first time and immediately left the store. Carter testified that he did not remember being back in the clothing department and claims that he held the jeans in his hands.
 {¶ 24} Here, we cannot find that the trial court as the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the theft conviction must be reversed and a new trial granted. While identifying information on the jeans did not show that they came from the Circleville store, nevertheless, the trial court could make a reasonable inference from employee Hayes' testimony that the jeans did come from the Circleville store. As the trier of fact, the trial court was free to believe or disbelieve any witness's testimony in whole or in part in resolving conflicts in the evidence. Substantial evidence supported the trial court's conclusion of guilt. Therefore, we find that Carter's theft conviction is not against the manifest weight of the evidence. *Page 9 
 {¶ 25} Accordingly, we overrule Carter's second assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellant pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J.: Concurs in Judgment Only.
 Abele, J.: Concurs in Judgment and Opinion. *Page 1