DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas that granted summary judgment in favor of appellees Charter One Bank F.S.B. and Tom Brown Custom Homes, Inc., et al. For the reasons that follow, this court affirms the judgment of the trial court.
Appellant Kathleen Hamburger sets forth the following assignments of error:
"ASSIGNMENT OF ERROR NO. 1
 "THE TRIAL COURT ERRED IN REFUSING TO STAY EXECUTION OF CHARTER ONE'S JUDGMENT IN FORECLOSURE AND IN CERTIFYING SAID JUDGMENT FINAL AND APPEALABLE, UNTIL THE FINAL RESOLUTION OF ALL CLAIMS ASSERTED AGAINST ALL PARTIES.
"ASSIGNMENT OF ERROR NO. 2
 "THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT FOR FORECLOSURE AND AN ORDER OF SALE BECAUSE APPELLANT'S DUTY TO PAY ON THE PROMISSORY NOTE WAS SUSPENDED BY APPELLEE'S FAILURE TO PERFORM CONDITIONS PRECEDENT.
"ASSIGNMENT OF ERROR NO. 3
 "THE TRIAL COURT ERRED IN GRANTING JUDGMENT IN FAVOR OF CHARTER ONE ON HAMBURGER'S COUNTERCLAIMS FOR DECLARATORY RELIEF, AS REQUESTED IN HAMBURGER'S COUNTERCLAIM AT COUNTS 13 AND 14.
"ASSIGNMENT OF ERROR NO. 4
 "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF CHARTER ONE ON COUNTS 9, 10, AND 12 OF APPELLANT'S COUNTERCLAIM.
"ASSIGNMENT OF ERROR NO. 5
 "THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON THE APPELLANT'S PERSONAL INJURY CLAIMS (COUNTS 15 AND 16), BECAUSE A GENUINE DISPUTE OF MATERIAL FACT EXISTS AS TO WHEN APPELLANT DISCOVERED HER CLAIM.
"ASSIGNMENT OF ERROR NO. 6
 "THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON THE APPELLANT'S CONSPIRACY CLAIMS (COUNT 17), BECAUSE THE TRIAL COURT MISTAKENLY THREW OUT THE PROPERTY DAMAGE COMPONENT OF THOSE CLAIMS AS WELL AS THE PERSONAL INJURY ASPECTS."
The facts that are relevant to the issues raised on appeal are as follows. In 1994, Hamburger entered into a contract with third-party defendants Tom Brown ("Brown") and Tom Brown Custom Homes, Inc. ("Custom Homes") for the construction of a single-family residence in Holland, Ohio. The construction was financed by appellee Charter One Bank, F.S.B. ("Charter One"). Hamburger eventually became dissatisfied with the construction of her home, claiming that the work was substandard and in violation of numerous building codes, and ultimately refused to permit Charter One to release the final payment to Brown. In 1995, after she and Brown were unable to resolve the dispute informally, Hamburger filed suit in the Lucas County Court of Common Pleas against Brown and Charter One (Case No. CI95-2097). In August 1998, however, Hamburger voluntarily dismissed the lawsuit.
On May 25, 1999, Charter One filed a foreclosure action against Hamburger after she stopped making payments on her loan obligations. In its complaint, Charter One alleged that it was due $183,947.92 with interest upon a promissory note secured by a mortgage executed on the property in January 1994 and that Hamburger was in default on the note. The bank further alleged that the mortgage deed contained a condition that non-payment when due of any installment on the note and continuation of the default for a period of thirty days rendered the entire unpaid balance immediately due. Charter One asked the trial court to declare its mortgage a first and best lien upon the property; to foreclose the mortgage and sell the property and pay Charter One out of the proceeds of the sale; and to grant a Writ of Possession and a deficiency judgment if the Sheriff's sale does not satisfy all amounts due and owing Charter One.
On August 25, 1999, Hamburger filed an answer to Charter One's complaint and a seventeen-count counterclaim and third-party complaint, asking for compensatory and punitive damages. In her answer, Hamburger denied each of Charter One's allegations and claimed that the note did not give Charter One the option of accelerating payments. The seventeen counts of the counterclaim and third-party complaint consisted of counterclaims against Charter One and a third-party complaint against Custom Homes, Brown and other parties.
The first twelve counts of this pleading reiterated Hamburger's claims in the previously dismissed action. The remaining five counts contained new claims. Count 1 presented a third-party claim against Custom Homes and Brown for breach of contract by failing to construct her home in a careful and workmanlike manner and by failing to conform to applicable building codes and other lawful requirements in performing the contract. Claimed defects in construction included, but were not limited to, the following: elevation of the basement floor set lower than the adjoining lake water level, causing water to run continuously under the floor and footer tiles; improper forming and pouring of concrete footers, resulting in cracking and warping of the foundation; use of improper concrete mix, causing structural weakness of basement walls; improper placement of steel support beams; substantial water leakage at the joint between the poured wall and block in the basement; substitution of lower grade lumber throughout the home; failure to include or cut in expansion joints in the basement floor, causing susceptibility to heaving or cracking; failure to use properly insulated wiring in the basement; failure to properly seal and insulate the basement and the attic; failure to follow safety codes for wiring the fireplace gas ignition switch; improper installation of flooring throughout the house; failure to properly construct the master deck over the garage and sun room, causing leakage and drainage problems; improper installation of plumbing, and substandard masonry work.
In Count 2, Hamburger alleged that Custom Homes and Brown breached their duty by constructing a home "replete with structural defects and code violations." In Count 3, Hamburger alleged that Custom Homes and Brown systematically overcharged her for items called for in the contract and also attempted to defraud her by charging for extras that were not provided, for a total overage of $19,895.08. In Count 4, Hamburger alleged that Custom Homes and Brown defrauded her by representing that they would construct the home in a careful and workmanlike manner and that the house would be constructed to meet all state and local codes; that Brown knowingly made the false representations or acted with reckless disregard for the truth or falsity of his statements, in order to induce Hamburger to enter into a residential construction contract with himself and Custom Homes; and that Hamburger justifiably relied on the representations to her detriment.
In Count 5, Hamburger alleged that the construction of her home was a "consumer transaction" pursuant to R.C. 1345.01 and that Custom Homes and Brown knowingly engaged in unfair, deceptive or unconscionable consumer sales practices. Count 6 alleged that Brown defamed Hamburger by sending a letter to the Home Building Association in which he stated that he and Hamburger were engaged in a sexual relationship, when no such relationship existed, and by stating that Hamburger tried to give him guardianship of her only child, which was also untrue; and that Brown intentionally and maliciously published those lies in order to convince others that there were no construction problems with the home, and to intimidate and embarrass Hamburger, all of which held Hamburger up to ridicule and disgrace.
In Count 7, Hamburger alleged that third-party defendant Gary Ungerer ("Ungerer"), individually and in his capacity as a housing inspector for Lucas County, wantonly, wilfully and recklessly failed to ensure that the home was adequately inspected during the construction process, and failed to see that all code violations were noted and corrected; failed to see that orders were issued to stop construction on the home or issue orders that would have corrected code violations and defects in construction; and issued or caused to be issued a final inspection report indicating that the home had been "built to code."
In Count 8, Hamburger alleged that third-party defendant Cavalear Properties Limited Partnership ("Cavalear") breached its duty by negligently failing to properly review all building plans and specifications for the home, which enabled Custom Homes and Brown to build a home that was substandard, did not meet elevation requirements and was situated so as to allow water to flow into the basement during and after construction.
Counts 9 through 12 contain counterclaims against Charter One. In Count 9, Hamburger alleged that Charter One negligently failed to provide adequate monitoring of the construction of the home and allowed monies to be paid to third-party defendants Custom Home and Brown that should not have been paid until measures had been taken to correct defects.
In Count 10, Hamburger alleged that Charter One wrongfully charged interest and principal for funds that should not have been released to Custom Homes and Brown.
In Count 11, Hamburger alleged that Charter One wrongfully charged her for principal and interest on funds that were never disbursed to Custom Homes and Brown.
In Count 12, Hamburger alleged that Charter One refused to release additional funds that could have been used for emergency repairs to the home to protect it from continued damage.
Counts 13 and 14 consisted of counterclaims for declaratory relief. In Count 13, Hamburger alleged that Charter One had not disbursed the entire amount of the note on which it was seeking to collect and asked the trial court to declare that disbursement of all sums required to be paid to Hamburger by Charter One is a condition precedent to an action on the note. In Count 14, Hamburger asked the trial court for an order declaring that the disbursement of all of the funds required to be paid to Hamburger by Charter One is a condition precedent to Charter One's attempt to use remedies upon default including, but not limited to, acceleration of payments or foreclosure upon any claimed mortgage.
Counts 15 and 16 consisted of personal injury claims against Charter One, Ungerer, Cavalear, Custom Homes and Brown, in which Hamburger asserted that the failures of Charter One and the third-party defendants to properly build, inspect, monitor and repair her home caused her to develop "sick building syndrome" and associated ailments, first diagnosed in April 1999.
In Count 17, Hamburger alleged that Charter One and all third-party defendants conspired and colluded to create, permit and ignore the substandard construction of her home, thus subjecting her to economic damage and personal injury. Hamburger alleged that the conspiracy is continuing, willful and malicious.
Charter One filed three separate motions for partial summary judgment. The first, filed on December 8, 1999, sought judgment on Counts 9, 10, 11 and 12 of Hamburger's counterclaim; the second, filed on May 15, 2000, sought judgment on Counts 13 and 14; and the third, filed on October 2, 2000, sought judgment on Counts 15, 16 and 17, which were Hamburger's personal injury and civil conspiracy claims. Custom Homes and Brown filed a motion for partial summary judgment on September 12, 2000.
On November 29, 2000, the trial court filed a judgment entry granting summary judgment in favor of Charter One on its complaint and on Counts 9, 10, 11, 12, 13 and 14 of Hamburger's counterclaim. Also in this judgment entry, the trial court denied third-party defendant Cavalear's motion for partial summary judgment on Count 8 of Hamburger's counterclaim, which alleged that Cavalear was negligent in failing to properly review all building plans and specifications which she claimed led to the home being built below the required elevation level for that lot.
On April 16, 2001, the trial court filed another judgment entry granting summary judgment in favor of Charter One, Cavalear, Custom Homes and Brown on the personal injury claims encompassed by Counts 15, 16 and 17 of Hamburger's counterclaim and third-party complaint. A motion for summary judgment filed by Ungerer, individually, was denied.
Hamburger filed a timely notice of appeal of the trial court's judgments. On June 20, 2001, the trial court filed a judgment entry, foreclosure and order of sale, foreclosing Charter One's mortgage interests and ordering the property to proceed to public sale.
On September 4, 2001, the trial court entered an order staying execution of Charter One's judgment on the condition that Hamburger post a $250,000 bond by September 21, 2001. There is no evidence in the record before this court that Hamburger ever posted the bond and it appears that the trial court reissued the order of sale because Hamburger subsequently moved this court to stay proceedings in the trial court. On January 11, 2002, this court ordered all further proceedings in this matter stayed, including the sheriff's sale of the home, pending appeal.
In her first assignment of error, appellant Hamburger asserts that the trial court erred by refusing to stay execution of Charter One's judgment in foreclosure and in certifying the June 20, 2001 judgment as a final, appealable order. Appellant does not argue that the order is not final and appealable, however, but appears to only challenge the wisdom of allowing an appeal from the judgment in favor of Charter One to proceed pursuant to Civ.R. 54(B) when the third-party claims are still pending in the trial court. Appellant asserts that if the trial court wanted to rule on the foreclosure action prior to the other claims it should have granted her request for a stay of the judgment pending appeal so that the property would be preserved for a jury to inspect it when considering the third-party claims.
Appellant's argument as to the trial court failing to issue a stay is moot. One week after the date appellant's appellate brief was filed, the trial court issued its September 4, 2001 order granting a stay pending appeal. Appellant failed to post the required bond by September 21, 2001, however, and the stay was lifted. As explained above, this court granted a stay of execution of judgment pending appeal on January 11, 2002, thereby rendering appellant's argument and first assignment of error moot.
In her second assignment of error, appellant asserts that the trial court erred by granting summary judgment to Charter One on its complaint in foreclosure. Appellant argues that her duty to pay on the note was suspended because Charter One had not yet disbursed the full amount of the debt ($203,150). Appellant argues that Charter One wrongfully expected payment of the full monthly amount without having loaned her enough principal to justify monthly payments under any amortization schedule at the agreed-upon interest rate. Appellant asserts that because full disbursement of the loan did not occur, Charter One cannot obtain judgment on the note and must instead pursue a breach of contract claim.
In reviewing a summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R.56(C).
It is undisputed that Charter One disbursed only $183,070 of the loan proceeds. It is also undisputed that in the absence of full disbursement, Charter One demanded payment from Hamburger of the monthly payment amount of $1,433.68 (interest and principal on the full loan value) pursuant to the terms of the promissory note. We have reviewed the promissory note signed by Hamburger on January 19, 1994 in the amount of $203,150 and, based thereon, find appellant's argument to be without merit, because the note does not require full distribution of the loan amount before Charter One may pursue its default remedies against Hamburger. Paragraph 3(A) of the note states:
 "I will make my monthly payments on the first day of each month beginning on March 1, 1995. I will make these payments every month until I have paid all of the principal and interest any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on February 1, 2024, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the `maturity date'." [Emphasis added.]
Paragraph 6(B) of the note states:
 "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default." [Emphasis added.]
Further, the "RESIDENTIAL CONSTRUCTION LOAN AGREEMENT (Home Construction Contract Form)" signed by appellant on December 15, 1993, states as follows:
 "7. DEFAULT. Borrower expressly covenants and agrees that upon the occurrence of any one or more of the following events set forth below (an "Event of Default"), all obligations on the part of Charter One to make the Loan hereunder, or to make any further disbursements hereunder, shall cease and terminate, and the Note and all other indebtedness secured by the Mortgage shall, at Charter One's sole discretion, thereupon become immediately due and payable:
"* * *
 "(b) If any sum payable on account of the principal or interest of the Note shall not be paid when due * * *."
Appellant's arguments simply are not supported by the clear language of the documents she signed. There was no requirement in either the note or the construction loan agreement that the full amount of the loan be disbursed before appellant was obligated to begin making payments. The note expressly set forth the date upon which appellant was to begin making payments, and the amount thereof, and the construction loan agreement set forth the conditions under which appellant could be in default. Clearly appellant, who by her own admission stopped making payments on the loan, was in default and the trial court did not err by granting summary judgment on the foreclosure action.
This court has reviewed the entire record of proceedings before the trial court and, upon consideration thereof and the law, finds that there exists no genuine issue of material fact as to this issue and, when construing the evidence that was before the trial court most strongly in favor of appellant, reasonable minds can only conclude that the first payment on the note became due on March 1, 1995 and that appellant was in default according to the terms of the note.
Charter One was entitled to summary judgment as a matter of law and, accordingly, appellant's second assignment of error is not well-taken.
In her third assignment of error, appellant asserts that the trial court erred by granting Charter One's motion for partial summary judgment on Counts 13 and 14 of her counterclaim for declaratory relief. In Count 13, appellant asked the trial court to declare that the disbursement of all sums required to be paid pursuant to the note was a condition precedent to an action on the note. In Count 14, appellant asked the trial court to declare that the disbursement of those funds was a condition precedent to Charter One's use or attempted use of remedies upon default, including acceleration of payments or foreclosure.
Appellant argues that the trial court's ruling in favor of Charter One was "over-simplistic" in that it relied entirely upon the text of the note and loan documents, without regard to Ohio law and despite Charter One's failure to follow the terms of the agreement. In its November 29, 2000 decision, the trial court found that the language of the note was clear and unambiguous. The trial court further noted as follows:
 "If the court were to adopt Ms. Hamburger's argument, it would provide a vehicle by which construction loan borrowers would never have to pay back their loans. The borrower would simply refuse to release the final draw; the bank would then not be able to disburse the full amount of the note, and payments would never commence. That was certainly not the intention of the parties in this case."
Both issues raised by appellant under this assignment of error have been addressed and resolved under Assignment of Error No. 2 and, accordingly, appellant's third assignment of error is not well-taken.
In her fourth assignment of error, appellant asserts that the trial court erred in granting summary judgment in favor of Charter One on Counts 9, 10 and 12 of her counterclaim. In Count 9, appellant alleged that Charter One negligently failed to adequately supervise the construction and allowed monies to be paid to Custom Homes and Brown that should not have been paid until defects had been corrected. In Count 10, appellant alleged that Charter One wrongfully required her to make interest and principal payments on funds the lender should not have released to Custom Homes and Brown. In Count 12, appellant alleged that she was further damaged by Charter One's refusal to release funds that could have been used to repair the home and protect it from additional damage.
As to appellant's Count 9, Charter One denied in its motion for summary judgment that it owed appellant any duty to verify that her home was being properly constructed and asserted that it was Hamburger who owed Charter One a duty to make sure that her home was being constructed in accordance with the plans and specifications. The bank asserted that it had a right to conduct inspections of the property but the inspections were to be conducted only to verify the degree of progress toward completion. It was Hamburger's duty, Charter One argued, to verify that her home was being constructed in accordance with the plans and specifications. As to inspections and how they were to relate to the disbursement of funds to the builder, Charter One cited the following language under paragraph 6 of the "RESIDENTIAL CONSTRUCTION LOAN AGREEMENT":
"* * *
 "(b) The obligation of Charter One to make any disbursement pursuant to subsection (a) above shall be subject to the following conditions:
 "(i) Charter One shall have received the report of its inspector verifying the percentage of completion of the Improvements and that the Improvements are substantially in accordance with the Plans and Specifications as to the date of such application (it being understood by Borrower that such inspections are made solely for the benefit of Charter One and not for the benefit of Borrower and that Borrower has no right to rely on the results of such inspections); * * *"
Charter One also submitted the affidavit of loan officer Chris Amstel, who stated that she told Hamburger the bank only inspected to verify the percentage of work done and that those inspections were performed only for the bank's benefit. Amstel further stated that she told Hamburger that it was her responsibility, not the bank's, to verify that construction was proceeding in accordance with her contract with the builder. Amstel stated that she did not tell Hamburger that the bank would assume the duty of inspecting the property to verify compliance with Hamburger's contract with the builder.
In support of her claim, Hamburger submitted her own affidavit in which she stated that Amstel represented to her, after the loan documents were executed, that Charter One would make inspections and would not permit any draws unless it was certain that the construction was done properly and in a workmanlike manner. Hamburger also asserted in her memorandum in opposition to summary judgment that Charter One loan administrator Debra Prater represented to her that she did not have to inspect the work progress because the bank's qualified inspectors would catch any problems. Hamburger presented no evidence of any such statements or representations made by Amstel or Prater.
This court has thoroughly reviewed the evidence before the trial court on this issue and we find that Hamburger's claim as to what she understood Charter One's obligation to be with respect to inspections of the property is directly refuted by the clear language of the loan agreement which she signed. Further, her claims as to oral representations made by Charter One personnel prior to the execution of the loan agreement are barred by the parol evidence rule. Ed Scchory Sons, Inc. v. Society National Bank (1996), 75 Ohio St.3d 433.
As to Hamburger's claim that the bank allowed funds to be paid that should not have been paid until measures had been taken to correct defects in the construction of the home, Charter One asserted on summary judgment that the bank requires the homeowner's signature approving any disbursement and that each of the four construction draws in this case was in fact approved by Hamburger. Charter One submitted in support of its motion the four documents authorizing disbursement of funds by Charter One, all of which were signed by Hamburger. The disbursement of the funds in each of the four instances was in accordance with the loan agreement. Hamburger approved each of the four draws and cannot later argue that Charter One should have taken it upon itself to interfere with the process and withhold some of those funds. Hamburger provides no support for this argument and we find that it is without merit.
Hamburger presents no arguments in support of that portion of her fourth assignment of error which states that the trial court erred by granting summary judgment in favor of Charter One on Counts 10 and 12 of her counterclaim.
Based on the foregoing, this court finds that the trial court did not err by granting summary judgment in favor of Charter One on Counts 9, 10 and 12 of Hamburger's counterclaim and, accordingly, Hamburger's fourth assignment of error is not well-taken.
In her fifth assignment of error, Hamburger asserts that the trial court erred by granting summary judgment on her personal injury claims (Counts 15 and 16). Hamburger argues that a genuine dispute of material fact exists as to when she discovered her claim. In these two counts of her complaint, Hamburger asserted that the failures of Charter One, Tom Brown, Custom Homes, Ungerer and Cavalear to properly build, inspect, monitor and repair her home — particularly with regard to moisture and water problems — caused her to develop "sick building syndrome" and other ailments, which she asserts were first diagnosed in April 1999 when she was examined by doctors at the Mayo Clinic.
In its motion for summary judgment on Hamburger's Counts 15, 16 and 17, Charter One asserted that the statute of limitations on Hamburger's personal injury claims had expired. Charter One argued that the statute began to run on appellant's claims for personal injury as early as 1996, well before the April 1999 date set forth in her counterclaim and third-party complaint. In its motion, Charter One referred to two letters Hamburger wrote in July 1996 and February 1997 to Charles Koch, Chairman of the Board of Charter One Bank, which were submitted as attachments to Hamburger's deposition. In her letters to Koch, Hamburger referred to health problems caused by conditions in the house.
In response to Charter One's motion, Hamburger asserted that she did not discover the true nature of her injuries or their cause until April and May 1999 when she was first diagnosed with a disease attributable to the conditions in the home. Appellant argued that prior to 1999, she had only vague suspicions of allergies or sinus problems caused by the house and did not know she had suffered toxic poisoning. Hamburger stated that a proper understanding of her injuries could only be gleaned from the records of her examination at the Mayo Clinic, which contain a diagnosis of "probable sick building syndrome."
The trial court, in its April 16, 2001 decision granting summary judgment, found that Hamburger had knowledge of her injury and its cause more than three years before she filed her complaint and that, in light of the applicable two-year statute of limitations, her personal injury claims must fail.
The trial court based its decision on statements as to her health problems made by Hamburger in a pro se motion for a protective order she filed in the original action in 1996, as well as on statements she made in her July 1996 letter to Charles Koch.
Hamburger now presents several arguments in support of her assertion that the statute of limitations on her personal injury claims did not expire before she filed her counterclaims and third-party complaint.
Appellant asserts that her personal injury claims are subject to the four-year statute of limitations set forth under R.C. 2305.09. This is no basis for this argument. R.C. 2305.09 applies to claims arising from injury to personal property — trespass upon real property; recovery of personal property, or for taking or detaining personal property; fraud; or other injuries "not arising on contract nor enumerated in sections 2305.10 to 2305.12 * * *." [Emphasis added.] As set forth below, Hamburger's personal claims are governed by R.C. 2305.10.
Appellant also asserts that her injuries are ongoing, the result of a continuous wrong, and therefore were preserved during the period preceding the filing of her complaint in 1999. She argues that her claim was not lost "simply because older injuries may have been barred by a statute of limitations." Construction on the home ceased in 1995, more than four years before Hamburger's personal injury claims were made. Further, as Custom Homes and Brown assert on appeal, any new injuries or wrongs that may have occurred over time occurred because Hamburger remained in the house after she began insisting that she was being harmed.
The controlling statute of limitations for appellant's personal injury claims is set forth in R.C. 2305.10, which provides that "[a]n action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose." R.C. 2305.10 does not define when a cause of action arises under the statute; that determination is left to the courts to decide. O'Stricker v. Jim Walter Corp. (1983),4 Ohio St.3d 84, paragraph one of the syllabus. The issue of exactly when Hamburger's cause of action arose is addressed below.
Hamburger argues that the discovery rule tolled the statute of limitations in her case because she did not learn of the connection between her health problems and the house until she received a diagnosis from the Mayo Clinic in 1999.
In Liddell v. SCA Services of Ohio, Inc. (1994), 70 Ohio St.3d 6, the Supreme Court of Ohio held that "ignorance of an injury may toll the running of the Statute of Limitations [sic]. Under certain circumstances, this discovery rule delays the running of the statute of limitations until the injury has been discovered." Liddell at 10-11. Recognizing the need for an equitable application of the statute of limitations in cases involving a latent injury, the Supreme Court inLiddell held that when an injury does not manifest itself immediately, the cause of action arises upon the earlier of either the date on which the plaintiff is informed by competent medical authority that he has been injured, or the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured. Liddell at 11.
Based on the foregoing, the issue of whether or not the two-year statute of limitations had expired by the time Hamburger filed her complaint turns on when she "discovered" her claimed injuries. This question can be answered by way of statements made by Hamburger and contained in the record. In the letter written to Charles Koch of Charter One Bank on July 26, 1996, Hamburger expressed numerous concerns with regard to the house and stated:
 "I have been living with `fire and life safety' issues, and problems caused by water and insect infiltration for almost two years now, and I am at physical risk. (I was recently treated for an acute respiratory infection caused by the mold and insects in my home. Water and insects get into our home as a result of the improper construction and unsealed areas)."
On February 28, 1997, Hamburger again wrote to Koch and stated, "My health continues to be effected [sic] by the house * * *." Further, in her affidavit filed in the trial court on November 20, 2000, Hamburger admitted to believing for the past five years that there was a connection between her health issues and the problems with the house, and stated: "Since 1995, I have experienced health problems which I have always suspected emanated from moisture and mold problems in my home caused by improper construction; these problems began as fatigue, and gradually came to include serious respiratory and other problems." By her own admission, Hamburger had made a connection in her own mind as early as 1995 between health problems she was experiencing and problems such as water infiltration, insects, mold and toxins in the house. The fact that appellant did not receive a diagnosis of "probable sick building syndrome" until 1999 does not eclipse her own acknowledgment as early as 1995 of illness which she attributed to the conditions in the house. This court therefore finds that the trial court did not err by finding that Hamburger's personal injury claims were time-barred and, accordingly, her fifth assignment of error is not well-taken.
In her sixth assignment of error, appellant asserts that the trial court erred by granting Charter One's motion for partial summary judgment on her conspiracy claim. Hamburger alleged in Count 17 of her counterclaim and third-party complaint that Charter One, Custom Homes, Brown and all other third-party defendants "conspired and colluded to create, permit, and ignore the substandard construction of [her] home, thus subjecting [her] to economic damage and personal injury as previously described." Hamburger further alleged that the conspiracy was "continuing, * * * wilful and malicious." In support of this assignment of error, Hamburger states that the trial court's ruling appears to have been "inadvertent," having merged the conspiracy claim with her personal injury claims.
In their motions for partial summary judgment on Hamburger's Counts 15, 16 and 17, neither Charter One nor Custom Homes/Brown make a distinction between the two types of injuries alleged by Hamburger in Count 17 or addressed the claim as one for conspiracy and collusion. Instead, they focused on her claim that, as a result of the conspiracy and collusion, she suffered personal injury. They argued, as they did in answer to Counts 15 and 16, that summary judgment should be granted because the two-year statute of limitations bars Hamburger's personal injury claims. In its April 16, 2001 decision, the trial court granted summary judgment as to Count 17 on the basis of Hamburger having failed to file within the two-year statute of limitations period.
The applicable statute of limitations in a claim for civil conspiracy is based on the underlying cause of action, which in this case is Hamburger's claimed personal injury. See Hollinghead v. Bey (July 21, 2000), Lucas App. No. L-99-1351, unreported; Cully v. St. AugustineManor (Apr. 20, 1995), Cuyahoga App. No. 67601, unreported. As we found under Assignment of Error No. 5, the statute of limitations for the underlying personal injury cause of action expired before Hamburger filed her complaint. Based on the foregoing, we further find that the statute of limitations on the civil conspiracy claim also had run. Id. Accordingly, the trial court did not err by granting summary judgment on Count 17 of Hamburger's complaint and appellant's sixth assignment of error is not well-taken.
On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., JUDGES CONCUR.