[This opinion has been published in *Ohio Official Reports* at 70 Ohio St.3d 6.]

LIDDELL, APPELLANT, V. SCA SERVICES OF OHIO, INC., APPELLEE.

[Cite as *Liddell v. SCA Serv. of Ohio, Inc.*, 1994-Ohio-328.]

*Statute of limitations—Injury allegedly caused by exposure to toxic chlorine gas does not manifest itself immediately—Cause of action for that injury arises, when.*

When an injury allegedly caused by exposure to toxic chlorine gas does not manifest itself immediately, a cause of action for that injury arises upon the date the plaintiff is informed by competent medical authority that he has been injured by exposure to the gas, or upon the date on which, by exercise of reasonable diligence, he should have become aware that he has been so injured, whichever date occurs first. (*O'Stricker v. Jim Walter Corp.* [1983], 4 Ohio St.3d 84, applied and followed.)

(No. 93-294—Submitted March 22, 1994—Decided August 3, 1994.)

Appeal from the Court of Appeals for Cuyahoga County, No. 61129.

_____

{¶ 1} On September 21, 1981, appellant Kenneth Liddell, a police officer employed by the city of East Cleveland, responded to a report of a trash truck on fire at the intersection of Euclid and Shaw Avenues. Upon arriving at the scene, Liddell observed a burning garbage truck with flames coming from the bottom and a large amount of black smoke billowing from the rear. He radioed for fire equipment and police backup.

{¶ 2} The garbage truck belonged to appellee SCA Services of Ohio, Inc. ("SCA") and had been transporting calcium hypochlorite, a substance classified as a hazardous waste. Sections 261.21 and 261.23, Title 40, C.F.R. That classification subjects the transportation and storage of calcium hypochlorite to state and federal regulation. E.g., Section 171.3, Title 49, C.F.R.; R.C. Chapter 3734. The truck, however, contained no markings that it was transporting hazardous waste.

{¶ 3} When the fire department arrived the firemen began hosing down the burning truck with water. Immediately afterward an explosion occurred in the back of the truck and a white cloud engulfed the area. The fire and ensuing explosion allegedly resulted from the mixture of the calcium hypochlorite with organic material, apparently cooking

fat, which also was being transported by the SCA truck. The explosion released a toxic chlorine gas in the form of a white cloud.

{¶ 4} Unaware that the white cloud was toxic, Liddell went to assist a school bus driver who had inadvertently driven a busload of school children into the engulfed area. Walking beside the bus, Liddell helped guide the bus driver, whose vision was obscured by the smoke, through the white cloud. After successfully escorting the bus to safety Liddell, overcome by the fumes, collapsed and was taken to Huron Road Hospital.

{¶ 5} At the hospital emergency room Liddell received treatment for smoke inhalation. He reported experiencing a scratchy throat and a burning and watering of his eyes. These symptoms abated, however, and he returned to work the next day.

{¶ 6} Liddell filed a workers' compensation claim for his medical bills in 1981 and later applied for compensation for permanent partial disability as a result of inhalation of the fumes.

{¶ 7} Within nine months of the exposure to the toxic gas Liddell began to experience frequent sinus infections. In 1987 a specialist performed surgery and removed a benign papilloma from Liddell's left nasal cavity. Neither Liddell nor his physicians connected these medical problems with his exposure to the toxic chlorine gas on September 21, 1981.

{¶ 8} Then, in January 1988, a biopsy revealed a cancerous growth in the same nasal cavity. At this time Liddell's physician advised him that there might be a relationship between the cancer and his exposure to the toxic fumes. Liddell subsequently underwent a complete facial degloving, which included removing his left sinuses and part of his facial skeleton.

{¶ 9} Liddell filed this negligence claim on April 26, 1989. On January 30, 1990, SCA filed a motion for summary judgment, arguing that Liddell's claim was barred by the so-called fireman's rule, and by the applicable two-year statute of limitations contained in R.C. 2305.10. The trial court denied that part of SCA's motion for summary judgment that was based on the fireman's rule, stating that a genuine issue of material fact existed as to whether SCA had violated R.C. 3734.15. However, the trial court granted SCA's motion for summary judgment with respect to the argument that Liddell filed his claim after the two-year statute of limitations specified in R.C. 2305.10 had expired. The court of appeals

affirmed, holding that Liddell's cause of action accrued on the date of exposure and not the date he was diagnosed with cancer.

{¶ 10} The cause is now before this court pursuant to the allowance of a motion to certify the record.

_____

*Sindell, Lowe & Guidubaldi* and *Ryan H. Fisher*, for appellant.

*Gallagher, Sharp, Fulton & Norman*, *Alan M. Petrov* and *Timothy J. Fitzgerald*, for appellee.

*Arter & Hadden* and *Irene C. Keyse-Walker*, urging affirmance for *amicus curiae*, Ohio Association of Civil Trial Attorneys.

*Altman & Calardo Co., L.P.A.*, and *D. David Altman*, urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

_____

**WRIGHT, J.**

{¶ 11} The issue presented to us today is whether a rule of discovery can be applied to toll the statute of limitations for a cause of action alleging negligent exposure to toxic chlorine gas, where the plaintiff subsequently develops a cancerous growth allegedly caused by the exposure, and where the cancer could not be, and was not, discovered until after the applicable statute of limitations governing causes of action for bodily injury had expired. In this case we decide that the application of the discovery rule is the appropriate solution.

I

{¶ 12} This is an action for bodily injury and as such is subject to the statute of limitations set forth in R.C. 2305.10. That provision states that "[a]n action for bodily injury *** shall be brought within two years after the cause thereof arose." Liddell filed this cause of action for negligence on April 26, 1989. Thus, his claim is timely only if his cause of action arose after April 26, 1987.

II

{¶ 13} SCA asserts that any cause of action for negligence which Liddell may have had arose on September 21, 1981, the date of exposure to the toxic chlorine gas. Specifically, SCA argues that when a traumatic event occurs in which a party is visibly

injured, and at the same time the party is exposed to toxic fumes, any cause of action, whether regarding an immediately apparent injury or a later manifestation of cancer, arises at the time of the traumatic event that caused the exposure. SCA points out that because Liddell did not file this cause of action until April 26, 1989, over seven-and-a-half years after the exposure, his claim is time-barred by R.C. 2305.10, the applicable two-year statute of limitations. SCA further argues that permitting Liddell to maintain a cause of action for cancer now would, in effect, be permitting him to unlawfully split his causes of action.

{¶ 14} Liddell contends that, because the cancer did not manifest itself immediately following his exposure to the toxic chlorine fumes, and because the cancer could not be detected before the applicable limitations period had run, his cause of action for negligence regarding the cancer did not begin to accrue until the cancer and its cause were discovered. He thus argues that his claim did not arise, and that R.C. 2305.10, the two-year statute of limitations governing this particular cause of action, did not begin to run until his doctors discovered the cancerous growth in his nasal cavity in January 1988. He maintains that because he filed this cause of action within two years of discovering the cancer he is not barred by R.C. 2305.10 from pursuing his cause of action.

{¶ 15} We find Liddell's argument to be more persuasive.

III

{¶ 16} As a preliminary matter, we must address SCA's argument that in allowing Liddell to proceed with this claim we would be permitting him to split his causes of action in contravention of a well-established rule of law. A generally accepted legal principle states that "a personal injury caused by a single tortious wrongful act of negligence is an entirety, affords ground for only one action, and cannot be split up in order to bring separate actions for different elements of damages." *State ex rel. Weinberger v. Indus. Comm.* (1941), 139 Ohio St. 92, 97, 22 O.O. 59, 62, 38 N.E.2d 399, 402. SCA insists that once an injury due to a defendant's conduct is evident, a claim accrues for that injury and for all other injuries that may arise in the future as a result of the same conduct. More to the point, assuming a single identifiable event caused the subsequent cancer, SCA maintains that Liddell filed a workers' compensation claim in 1981 for an injury resulting from the event, that he received a permanent partial disability award on account of the injury, that he thereby knew at least by 1983 that he had been permanently injured, that all the elements

4

needed to bring a cause of action were evident within two years of the event, and that Liddell now cannot split his causes of action and maintain a separate claim based on his cancer. In fact, SCA attempts to convince us that this, and not the application of a rule of discovery to the statute of limitations, is the real issue in the instant case.

{¶ 17} To bolster its argument, SCA points out that this case differs significantly from the asbestos cases where courts have held that a plaintiff can maintain a cause of action against a defendant when exposure to asbestos causes cancer, even though the plaintiff had been diagnosed with a noncancerous disease related to the exposure, such as asbestosis, much earlier and did not file a claim at that time. *See Wilson v. Johns-Manville Sales Corp.* (C.A.D.C.1982), 684 F.2d 111. In asbestos cases a plaintiff typically is exposed to asbestos over a period of time and cannot pinpoint one specific exposure that caused the cancer, whereas here a single identifiable event, not a creeping disease, allegedly caused Liddell's cancer. In essence, SCA asserts that Liddell did not have the option to waive a tort claim for the harm immediately caused by the toxic gas and sue for a subsequent cancer, should it later develop. We disagree.

{¶ 18} We need not and do not decide whether a judgment for bodily injury obtained by Liddell between 1981 and 1983 would have precluded a subsequent claim based on the cancer discovered in 1989. Rather, as Judge (now Justice) Ginsberg persuasively articulated in rejecting the claims-splitting argument in the District of Columbia Court of Appeals, "[i]t suffices to point out that res judicata (claim preclusion) doctrine and policy would control the decision of that question. But the issue before us is not properly decided under the law governing judgments. Rules of res judicata (claim preclusion) and collateral estoppel (issue preclusion) concern the preclusive effects of former adjudication. Here, there has been no former adjudication, no prior action resulting in a judgment to be given effect in a subsequent action. In shaping its position largely on the basis of decisions concerning limitations on the opportunity in a second action to litigate claims that were litigated, or could have been litigated, in a prior action, Johns-Manville has misdirected its attention and argument. This case requires us to focus, not on judgments and their preclusive effects, but on statutes of limitations and the policies they implicate in personal injury actions. We therefore consider below the appropriate

delineation of the claim or cause of action in suit in the relevant context." (Emphasis sic; footnotes omitted.) *Wilson*, *supra*, at 117-118.[1]

IV

{¶ 19} Statutes of limitations seek to prescribe a reasonable period of time in which an injured party may assert a claim, after which the statute forecloses the claim and provides repose for the potential defendant. Historically, plaintiffs have regarded statutes of limitations as irksome procedural barriers that obstruct otherwise valid claims. Thus these statutes consistently provide a ripe source for litigation.

{¶ 20} Sound policy arguments exist, however, for the application of statutes of limitations. This court has recognized the rationale underlying these statutes to be fourfold: "to ensure fairness to defendant; to encourage prompt prosecution of causes of action; to suppress stale and fraudulent claims; and to avoid the inconvenience engendered by delay, specifically the difficulties of proof present in older cases." *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 88, 4 OBR 335, 339, 447 N.E.2d 727, 731.

{¶ 21} Statutes of limitations cause particular problems in cases like the one before us today in which a latent injury cannot be detected before the applicable limitations period expires, were the statute to begin to run at the time of the event that caused the injury. To avoid the potential harshness inherent in a rigid application of these statutes courts have devised exceptions where ignorance of an injury may toll the running of the statute of limitations. Under certain circumstances this discovery rule delays the running of the limitations period until the injury has been discovered.

{¶ 22} Only recently has Ohio recognized the use of a rule of discovery to toll the running of certain statutes of limitations. This court first adopted a discovery rule in *Melnyk v. Cleveland Clinic* (1972), 32 Ohio St.2d 198, 61 O.O.2d 430, 290 N.E.2d 916. In *Melnyk* we held that when a surgeon negligently leaves a foreign item in the body of a patient, the running of the statute of limitations governing a claim for medical malpractice

---

1. Had we, in fact, been confronted with the issue of claim preclusion due to the previously filed worker's compensation claim, we would have been constrained to deny consideration. Our review of the record has revealed that SCA failed to raise below, as required, the affirmative defense of res judicata, even given Ohio's policy of liberally amending pleadings and motions, and thus failed to preserve that issue for our consideration here.

is tolled until the patient discovers, or by the exercise of reasonable diligence should have discovered, the negligent act. *Id.* at syllabus.

**{¶ 23}** Since *Melnyk* this court has applied a rule of discovery to several other areas of law. *See O'Stricker v. Jim Walter Corp.*, *supra* (discovery rule adopted for claims of bodily injury resulting from exposure to asbestos); *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438 (discovery rule expanded to cover claims for medical malpractice); *Skidmore & Hall v. Rottman* (1983), 5 Ohio St. 210, 5 OBR 453, 450 N.E.2d 684 (discovery rule for medical malpractice adopted in *Oliver* also adopted for legal malpractice claims because the same statute of limitations, R.C. 2305.11(A), controlled both legal and medical malpractice actions); *Burgess v. Eli Lilly & Co.* (1993), 66 Ohio St.3d 59, 609 N.E.2d 140 (discovery rule applied to DES-related claims); *Browning v. Burt* (1993), 66 Ohio St.3d 544, 613 N.E.2d 993 (discovery rule applied to a claim of negligent credentialing of a physician by a hospital).

**{¶ 24}** In *O'Stricker*, *supra*, this court first applied the discovery rule to actions for which R.C. 2305.10, the statute in question today, is the statute of limitations. The plaintiff in that case filed a cause of action alleging the defendant's negligent production and distribution of materials containing asbestos. This claim, however, was filed prior to an amendment to R.C. 2305.10 that created a statutory rule of discovery for causes of action for bodily injury involving exposure to asbestos or chromium.[2] The court, nevertheless, found it appropriate to adopt a common-law rule of discovery for asbestos cases and permitted the claim.

**{¶ 25}** The court reached this conclusion only after examining whether the rationale underlying statutes of limitations applied to that particular case which involved "a latent disease with a gestation period of up to thirty years." *Id.*, 4 Ohio St.3d at 89, 4 OBR at 339, 447 N.E.2d at 731. We noted that it would not be unfair to require the defendant to defend an action based on the hazards associated with the use of asbestos. "Such a defense

---

1. The General Assembly amended R.C. 2305.10 effective June 12, 1980, by adding the following language:
"For purposes of this section, a cause of action for bodily injury caused by exposure to asbestos or to chromium in any of its chemical forms arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured by such exposure, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured by the exposure, whichever date occurs first." Am. H.B. No. 716, 138 Ohio Laws, Part II, 3412.

would necessarily rest on documentary evidence of sales of asbestos fireproofing products, the presence or absence of warnings on the products, and the state of knowledge of the dangers of working with asbestos. Such documentary evidence, unlike that requiring the exercise of individuals' memories, does not typically become less reliable over time. Nor would it be unfair to require defendants to collect such documentary evidence, since such records would typically be kept in the ordinary course of business. Conversely, to deny plaintiff an opportunity to pursue his claim, possibly before he knew it existed, would only compound the personal tragedy ***." *Id.*

{¶ 26} We further noted that "prompt prosecution of claims cannot be engendered by a statute of limitations unreasonably short. Rather, such a statute would bar legitimate actions before the injury had manifested itself." *Id.*

{¶ 27} Finally, while we recognized the danger that stale and fraudulent claims might increase, we did not "find the equities such that the vast majority of valid claims must be sacrificed in the interest of weeding out frivolous ones." *Id.* at 89, 4 OBR at 340, 447 N.E.2d at 732. Neither "courts [n]or defense counsel [are] incompetent to expose such cases." *Id.*

{¶ 28} Accordingly, we concluded that "having in view the underlying rationale for statutes of limitations and the equities and public policy appropriate in such latent disease cases, this court believes a liberal interpretation of the time of accrual is appropriate in this and all actions alleging the infliction of bodily injury which only manifests itself at a point subsequent to the alleged negligent conduct of defendant." (Emphasis added.) *Id.* In ruling that the plaintiff's claim was timely filed the court fashioned the following rule for determining when a plaintiff's claim for latent injury accrues: "When an injury does not manifest itself immediately, the cause of action arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first." *Id.* at 90, 4 OBR at 340, 447 N.E.2d at 732.

V

{¶ 29} We find the rationale expressed in *O'Stricker* persuasive and, in our judgment, we need look no further than that case to resolve the issue facing us today. *O'Stricker* cogently outlines the reasons for adopting a discovery rule in latent-disease

8

cases and then sets forth a rule of accrual for determining the date of the discovery. We are convinced that a similar rule should apply to the present situation as well.

{¶ 30} Liddell's disease did not manifest itself immediately. Rather, his cancer, and its connection to the toxic exposure, went undetected for over six years. Consistent with our reasoning in *O'Stricker*, this case does not represent the circumstance of a plaintiff sitting on his rights. Liddell could not, and did not, discover his injury, the cancer, before the two-year statute of limitations governing bodily injuries had expired. Moreover, had Liddell attempted to bring a cause of action for negligence in 1981, any specification of damages for cancer certainly would have been strongly opposed by SCA on the grounds that they were too speculative. Hence, under SCA's theory Liddell would be confronted with a dilemma. He could either meet the statute of limitations and file a claim for compensation more than four years before he discovered the disease, or, as he did here, file a claim at the time of discovery, which occurred more than four years after the statute of limitations had expired.

{¶ 31} A rigid adherence to our procedural rules would place the defendant in a superior position regardless of the alternative chosen by the plaintiff. We cannot countenance such a rigid application of the statute of limitations here. Given the policy considerations underlying our discovery-rule decisions it is not unfair to expect the defendant to defend this type of cause of action. Rather, the procedural dilemma confronting a plaintiff in cases where a long latency conflicts with a short statute of limitations provides the plaintiff with only an illusory opportunity to litigate his or her claim. Under these circumstances, to deny the plaintiff a genuine opportunity to pursue a cause of action against a defendant now is patently unfair.

{¶ 32} We therefore adopt the rationale of *O'Stricker* and elect to extend the *O'Stricker* rule of accrual to the instant case. Accordingly, we rule that when an injury allegedly caused by exposure to toxic chlorine gas does not manifest itself immediately, a cause of action for that injury arises upon the date the plaintiff is informed by competent medical authority that he has been injured by exposure to the gas, or upon the date on which, by exercise of reasonable diligence, he should have discovered that he has been so injured, whichever date occurs first.

V.

**{¶ 33}** Applying this rule to the instant case we find that Liddell filed his cause of action for negligence within the period specified by R.C. 2305.10. Liddell was first informed in January 1988 by competent medical authority that the cancerous growth in his nasal cavity might be linked to his exposure to toxic chlorine gas. He filed this cause of action on April 26, 1989, well within the two-year time limit.

**{¶ 34}** For the reasons stated above, we hold that Liddell's cause of action for negligence was timely filed. We therefore reverse the judgment of the court of appeals and remand this cause for further proceedings.

Judgment reversed

and cause remanded.

MOYER, C.J., A.W. SWEENEY, DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.